**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**RAYMOND JAMES & ASSOCIATES, INC., ET AL.**                               **PLAINTIFFS**

**V.**                                           **CAUSE NO. 3:19-CV-394-CWR-LRA**

**RALPH H. BARLOW, ET AL.**                                                **DEFENDANTS**

**ORDER**

In this case, 20 investors claimed they were defrauded by their former financial advisors at what is now Raymond James & Associates, Inc. The dispute proceeded to a 17-day FINRA arbitration conducted over the course of seven months. The investors largely prevailed.[1] The arbitrators unanimously awarded the investors compensatory damages, punitive damages, costs, and attorney's fees.

Raymond James now seeks to vacate the arbitration award. It argues that the three arbitrators were "well educated, seasoned attorneys" who nonetheless "egregiously" and intentionally "utterly disregarded" Mississippi law. The best articulation of Mississippi law, Raymond James claims, is an unpublished, non-binding 2018 opinion from the Circuit Court of Hinds County, Mississippi.

It is difficult to vacate arbitration awards on this basis. Federal courts generally presume that arbitrators follow the law, *see Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 232 (1987), and that parties and arbitral bodies are willing and able "to retain competent, conscientious, and impartial arbitrators," *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985).[2] So Raymond James can prevail only in the "extraordinarily

---
[1] Four investors prevailed on one of their accounts, such as an IRA, but were denied relief for other accounts.
[2] During the arbitration, Raymond James' lead counsel admitted that this was exactly what they had received. He said,

narrow" circumstances set forth in § 10 of the Federal Arbitration Act.[3] *McKool Smith, P.C. v. Curtis Int'l, Ltd.*, 650 F. App'x 208, 211 (5th Cir. 2016) (quotation marks and citation omitted). The precise circumstance at issue in this case is whether the arbitrators "exceeded their powers." 9 U.S.C. § 10(a)(4).

As the Fifth Circuit did in *McKool Smith*, this Court will assume without deciding that "manifest disregard" of the law justifies vacatur under § 10(a)(4). 650 F. App'x at 212. Manifest disregard is defined as "more than error or misunderstanding with respect to the law." *Id.* (quotation marks and citation omitted). The arbitrators must have "appreciated the existence" of "well defined, explicit, and clearly applicable" governing law, yet "decided to ignore or pay no attention to it." *Id.* at 213 (quotation marks, citations, and brackets omitted). The challenging party must then establish "that the award resulted in a significant injustice." *Id.* (quotation marks and citation omitted).

Against this unfavorable standard of review, Raymond James has come up with a clever strategy. The Court will begin by explaining the strategy because, although it may seem tangential at first, understanding it brings clarity to the issues at the heart of this case.

I.

Employees and managers at Raymond James' Jackson, Mississippi office ran a fraudulent penny-stock scheme by abusing their clients' stock and retirement accounts. As proven by a

---

> I want to thank the panel. Your attentiveness, your diligence, your willingness to listen to both sides, your curiosity, you asked certainly a large number of questions, perhaps a record number, and we appreciate your interest. . . . [I]t demonstrates not just curiosity and sincere intellectualism, but a real interest in the case, and I think everyone in the room can appreciate and respect that. And I thank you.

In this Court, though, Raymond James argues that "the arbitrators were essentially co-conspirators with the [investors]." That is a strong charge – one that must not be taken lightly – especially coming from an attorney who is a FINRA arbitrator himself. This Court sees no evidence to support the accusation.

[3] Courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987).

treasure trove of documents and testimony, the wrongdoing was substantial and extraordinary steps were taken to conceal the transgressions. Victims eventually unearthed the fraud and filed a number of cases and claims seeking to recoup their losses. One of those cases was *Baker v. Raymond James*.

*Baker* was being litigated in the Circuit Court of Hinds County, Mississippi, at the same time our case (*Barlow*) was pending before the arbitrators. Raymond James hired the same attorneys to defend its interests in both disputes. Local counsel was from Bradley LLP; national counsel was from DLA Piper.[4] Circuit Judge Jeff Weill presided over *Baker*.

The *Baker* case was going well for Raymond James. Counsel for those victims had failed to take any discovery to support their claims. To be clear, when the Court says any discovery, those victims propounded zero interrogatories, zero requests for production of documents, no subpoenas, no requests for admissions, and took not one deposition. So it was not surprising when Judge Weill granted Raymond James' motion for summary judgment and directed its attorneys to send a proposed Order to his chambers.

It was at this moment that Raymond James' sophisticated[5] attorneys tried to leverage their victory in *Baker* into something more. They drafted an order that ruled against the *Baker* plaintiffs, but then added a page of dicta designed to take out the *Barlow* claimants too. The page began, "*While not directly argued*, other bases for tolling, including the continuing tort doctrine and fraudulent concealment doctrine, do not apply." (Emphasis added.) The draft then devoted

---

[4] Raymond James conducted the *Barlow* arbitration exclusively with DLA Piper. It brought Bradley in for this court proceeding.
[5] The Court uses the term "sophisticated" because these lawyers were representing Raymond James in the other disputes. Unlike plaintiffs' counsel in *Baker*, they knew the damning evidence contained in their own documents, which were not subject to any discovery requests.

3

subsequent paragraphs to knocking down each of these tolling doctrines. The paragraphs were entirely gratuitous since none of these doctrines had been "directly argued."

Judge Weill signed and entered the draft as his own order.

Raymond James' attorneys subsequently presented Judge Weill's order to the arbitrators in this dispute. They told the arbitrators that Judge Weill had nailed it. Their brief here, for example, claims the two cases had "***exactly the same facts and law***" and praises Judge Weill for his "cogent articulation of current Mississippi law on the statute of limitations." We now know that counsel's praise was really self-flattery.

There is no allegation or insinuation that Judge Weill acted unethically. Overworked and underpaid state trial judges regularly ask prevailing parties to draft orders memorializing their rulings. This Court can take judicial notice of the Hinds County Circuit Court docket. Each judge on that court is expected to handle a high volume of criminal and civil cases with far fewer resources than we provide our federal judges.

The error lies in Raymond James' pivot from *Baker* to *Barlow*. The *Baker* plaintiffs didn't take any discovery. If they lacked evidence of fraudulent concealment—a doctrine they apparently did not even argue—that was their fault. Their failure says nothing about the *Barlow* claimants' evidence of fraudulent concealment, which apparently was voluminous enough to support a 17-day arbitration. The cases are simply not the same.

It also is not clear that the same law recited in *Baker* applies to our dispute. The investors in this action have pointed to a split of authority concerning the application of state statutes of limitations to arbitrations. *Compare Raymond James Fin. Servs., Inc. v. Phillips*, 126 So. 3d 186, 188 (Fla. 2013) ("we hold that Florida's statute of limitations applies to arbitration") *with Gannett Fleming, Inc. v. Corman Constr., Inc.*, 243 Md. App. 376, 397 (2019) ("On its face,

[Maryland's catch-all three-year statute of limitations] applies only to 'civil action[s] at law.' And arbitration proceedings are not civil actions at law."); *see also Egan Jones Ratings Co. v. Pruette*, No. CV 16-MC-105, 2017 WL 4883155, at *3 (E.D. Pa. Oct. 30, 2017) ("Only three states have passed laws that expressly apply the statute of limitations to arbitration proceedings . . . . The remaining states are inconsistent on the question of whether arbitration proceedings should be subject to a limitations period.") (collecting cases). The Mississippi Supreme Court has not weighed in.

For these reasons, it makes little sense to treat *Baker* as gospel. It's a different case issued on different evidence, and is two levels short of being a definitive statement of Mississippi law. The arbitrators devoted a six-hour oral argument to the legal standard as articulated by the Mississippi Supreme Court. That they parted ways with one trial-court decision—drafted by a party—is not enough to vacate their award.

II.

To all this, Raymond James presses that the panel intentionally disregarded the *Baker* ruling because arbitrator Jim Warren was biased against Judge Weill. The bias was revealed, the firm says, when Warren told the attorneys, "you don't have to worry about teaching me what a circuit court judge's opinion is worth, particularly one who's about to go off the bench."

Accepting Raymond James' argument requires one to disregard all the times Warren praised Judge Weill (a "fine fellow," "I have a lot of respect for him," and so on), and Warren's specific praise for the *Baker* decision ("well-written"). Accepting the bias argument also requires one to disregard Warren's decades as a distinguished and respected practitioner in Mississippi. To cast this aspersion on him on this record is unfortunate and undeserved.

5

Warren's statement may be regrettable, since trial court rulings have the same persuasive force whether the judge is departing or staying. But it does not justify the accusation that Warren was biased against Raymond James or its counsel.

Still, there is one valid concern underneath Raymond James' grievance. We do not have a consistent standard for weighing statements of persons in power. In employment law, some statements of managers are obvious evidence of racism, while others are minimized as mere "stray remarks." *See, e.g.*, *Richmond v. Miss. Dep't of Human Servs.*, 745 So. 2d 254, 261 (Miss. 1999) (Banks, J., concurring) ("[T]he term 'nigger' is a universally recognized opprobrium, stigmatizing African-Americans because of their race.") (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)); *Jones v. Fluor Daniel Servs. Corp.*, 959 So. 2d 1044, 1049 (Miss. 2007) (reversing summary judgment on intentional infliction of emotional distress claim where African-American employees were called monkeys); *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) ("'stray remarks,' . . . standing alone, are insufficient to defeat summary judgment."). In cases challenging actions of multi-member bodies, we have had difficulty determining when to link remarks of some members to the actions of the whole. As the Fifth Circuit put it in one such case, "[d]iscerning the intent of a decisionmaking body is difficult and problematic." *Veasey v. Abbott*, 830 F.3d 216, 233 (5th Cir. 2016) (en banc).

The Supreme Court has not always given us clear direction. In June 2018, for example, the Court remanded a case where a minority of decision-makers on a multi-member tribunal made remarks "neither tolerant nor respectful of [the petitioner's] religious beliefs." *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1731 (2018). In another ruling issued that same month, however, the Court disregarded the *sole* decision-maker's inflammatory remarks toward religious beliefs, and instead placed more weight on the fact that

the order itself was "facially neutral toward religion." *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018). The cases arose from different circumstances, to be sure, but the incongruity was noticed. *See Trump*, 138 S. Ct. at 2447 (Sotomayor, J., dissenting).

On the circumstances of *this* case, Raymond James' bias argument looks like an attempt to distract us from the legal issue at hand: whether the arbitrators blatantly disregarded Mississippi law. And it's awfully difficult to conclude that a questionable remark about a judge leaving the bench amounts to manifest disregard, where the allegedly disrespected ruling discusses different evidence and perhaps inapplicable law, and there is no sign that any arbitrator disregarded the *actual* controlling law—the decisions of the Mississippi Supreme Court. Finding manifest disregard is made more difficult by the fact that no party asked the panel to issue a written ruling on the statute of limitations issue. At least then we would be able to evaluate the panel's reasoning.

Raymond James' argument may also be a distraction from the sole factual issue of this case. Recall that at the end of a gauntlet of legal jargon, Raymond James must show "that the award resulted in a significant injustice." *McKool Smith*, 650 F. App'x at 213 (quotation marks and citation omitted). This it cannot do.

No amount of hand-waving over Jim Warren should take away from the reality that Raymond James' employees and managers defrauded their clients. The panel made an explicit factual finding of fraud and the Court is bound by that finding. *See id.* Raymond James, in fact, has arguably conceded in this litigation that there was no "significant injustice," as it failed to argue any injustice in its opening brief. It merely says its former clients should have figured out the fraud earlier. In this situation there is no injustice in permitting the award to stand.

III.

The arbitration award is confirmed. A separate Final Judgment will issue.

**SO ORDERED**, this the 27th day of March, 2020.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE